El Pueblo de Puerto Rico, demandante y apelado, *v.* Severiano Cruz Rodríguez, acusado y apelante.

No. 4236.—*Sometido:* Febrero 6, 1931. *Resuelto:* Diciembre 8, 1931.

*Buenaventura Esteves,* abogado del apelante: *R. A. Gómez,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Mediante acusación de asesinato en segundo grado Severiano Cruz Rodríguez fué declarado reo de ese delito y sentenciado a diez años de presidio. Al terminar la prueba de cargo, el abogado del acusado pidió que se ordenara la enmienda de la acusación de manera que imputase un homicidio voluntario solamente. La negativa del juez de distrito a ordenar esa enmienda y a instruir al jurado de conformidad se señala ahora como error. Otra contención es que el veredicto es contrario a derecho y no está sostenido por la prueba.

El primer testigo ocular del gobierno, Luis Soto, declaró que él y Maximino Cruz, tío de Severiano, se habían detenido en una casa como a cuarenta y cinco varas del costado del camino; que Severiano iba por el camino y se detuvo cuando Maximino llamó; que mientras los dos hablaban Ventura Cruz, padre de Severiano y hermano de Maximino, llegó al sitio y trabó discusión con Maximino, y se fueron a las manos; que Severiano, quien estaba parado un poco más arriba, sacó un arma e hirió a Maximino en el pecho; que la actitud de Ventura cuando llegó era altiva; que él acometió a Maximino y se agarraron; que entonces Severiano, que estaba parado más adelante, vino e hirió a Maximino; que Maximino llevaba en sus manos una varita blanca para su caballo; y que no agredió a Severiano ni a Ventura antes de ser acometido por el último.

Interrogado en la repregunta respecto al tema de la conversación entre Maximino y Severiano, este testigo dijo que estaban discutiendo algo que le había ocurrido a Eulogio Cruz, y Maximino le decía a Severiano que debía respetarse a la familia, como dándole un consejo; que Maximino había dejado su cabalgadura en la casa en que estaba el testigo y había ido a pie donde Severiano; que Maximino y Severiano no se fueron a las manos; que Severiano había estado hablando con Maximino poco antes de llegar el padre; que Severiano estaba tres o cuatro cuerdas delante de su padre; que el testigo pudo oír lo que pasó entre Maximino y Severiano a una distancia de cuarenta y cinco varas porque hablaban en voz alta; que él sólo oyó partes de la conversación; que al oír esto el testigo se desmontó y se aproximó al sitio, pero Ventura llegó primero que el testigo; que Ventura llevaba una vara colorada y Maximino una blanca; que Maximino le pegó a Ventura con la vara; que el dicente había manifestado en el examen directo que Maximino no había agredido primero a Ventura porque el testigo no consideraba un "fuetazo" con una vara como una agresión; que Maximino era un hombre fuerte, de una edad regular, y Ventura era "un viejo más anciano".

Nuevamente interrogado por el fiscal acerca de quien fué el agresor, el mismo testigo dijo que "se tiraron los dos iguales".

El siguiente testigo, Inocencio Santiago, expresó que Maximino y Severiano estaban "porfiando pacíficamente" cuando Ventura llegó y le dijo a Severiano: "Camina para donde vas"; que Maximino y Ventura trabaron una discusión y se "emburujaron" y Severiano brincó e hirió a Maximino; que en la discusión entre Maximino y Ventura éste se mostró más pacífico que aquél; que Maximino llevaba una vara con la que dió el primer "cantazo"; que Ventura y Maximino se agarraron y se produjo la lucha; que Ventura tenía una vara y que la de Maximino era la más delgada de las dos.

En la repregunta este testigo agregó que estaba como a seis o siete metros de distancia y que Ventura no hizo uso de su vara.

Faustino Tirado manifestó que cuando Maximino se dirigió por primera vez a Severiano, éste echó a andar hacia la casa y Maximino le volvió a decir: "Aguárdame ahí, que tengo que hablar contigo"; que entonces Severiano se detuvo y Maximino fué donde él y tuvieron algunas palabras que el testigo oyó y fué donde ellos estaban; que Ventura llegó casi al mismo tiempo y que surgió una discusión entre él y Maximino; que el testigo vino y le dijo a Severiano: "Oye, Severiano, vete para donde vas y déjense de garatas y cosas; respétame y vete"; que Severiano se marchó y la discusión entre Maximino y Ventura continuó, hubo un cambio de golpes, y Severiano volvió e hirió a Maximino con un cortaplumas; que el testigo no se fijó bien cómo empezó el cambio de golpes porque él le estaba diciendo a Severiano que se fuera; que el testigo le dijo a Severiano que se fuera porque aquélla era "una discusión de pelea", y el testigo no quería que riñeran; que Maximino estaba peleando con Ventura cuando Severiano hizo uso de la cuchilla; que estaban peleando cuerpo a cuerpo; y que Maximino estaba desarmado.

El examen de repreguntas trajo la información adicional de que Maximino era un hombre joven y fuerte.

A los extremos más resaltantes de la prueba de cargo podemos ahora añadir lo que dijo Ventura Cruz como testigo de la defensa. El declaró que tenía como sesenta años y que su hermano, Maximino, tenía como treinta y cuatro o treinta y cinco; que Maximino era el menor de ocho hermanos; que el testigo oyó cuando Maximino llamó desde el camino y le dijo a Severiano: "Aguárdame ahí, que tengo que hablar contigo"; que el testigo y Severiano seguían el mismo camino pero bastante retirados uno de otro; que el testigo alcanzó a Maximino tan pronto como fué posible y le preguntó lo que le pasaba con Severiano, diciéndole que

si algo le sucedía que se lo dijera para regañar a Severiano; que Maximino entonces atacó al testigo y éste le exigió respeto pero Maximino no le atendió; que el testigo llevaba una vara de "ausubo" como del grueso de su dedo; que Maximino agarró la vara y trató de arrebatársela al testigo quien opuso resistencia, y surgió la lucha; que Maximino se paró en un pie del testigo y éste se cayó y Maximino le quitó la vara y le dió con ella; que el testigo nuevamente empuñó la vara y mientras Maximino trataba de quitársela, Severiano, que estaba como a ocho o diez metros de distancia, vino y lo hirió por el costado; que la misma tarde la contusión producida por la vara fué examinada por un médico que dió una receta al testigo; que Maximino era un hombre fuerte, más fuerte que el testigo, más fuerte que Severiano; que sus fuerzas eran casi iguales a las de Severiano y el testigo juntos.

El médico que examinó la contusión y escribió la receta a que se refirió Ventura Cruz declaró en torno a esos hechos. El récord no revela quien era Eulogio Cruz, ni lo que le había sucedido. La herida en el pecho fué el único rastro de violencia hallado en el cuerpo del occiso. Se demostró el previo buen carácter del acusado.

Como una exposición abstracta de ley, las instrucciones al jurado fueron substancialmente correctas. Hubieran sido más inteligibles, sin embargo, si se le hubiera dicho específicamente al jurado el veredicto que debía rendir en caso de que llegara a conclusiones de hecho concretas. Se imprimió demasiado énfasis sobre las distinciones entre asesinato en primer grado y asesinato en segundo grado, y entre malicia expresa y malicia tácita, y no el suficiente sobre la diferencia entre asesinato en segundo grado y homicidio voluntario. Aun si pudiera admitirse que el juez de distrito estaba justificado al presentar el caso como uno de asesinato en segundo grado, al jurado debió decírsele más claramente que entre asesinato en segundo grado y homicidio, si tenía duda razo-

nable sobre la cuestión de malicia, no debía declarar al acusado culpable del delito mayor. Aun mirando el caso, solamente para los fines de la argumentación, desde el mismo ángulo, al jurado debió decírsele que si hallaba que Maximino Cruz fué en verdad el agresor, y que la muerte había sido realmente producida en un arrebato de cólera ocasionado por el ataque de Maximino al padre del acusado, entonces ese ataque hubiese sido una provocación adecuada (es decir, una provocación adecuada para producir un arrebato de cólera), y que los hechos a que así habían llegado justificarían un veredicto de homicidio voluntario. 29 C. J. 1141, sección 124; 13 R.C.L. 793, sección 97, y las autoridades citadas en la nota 4.

No podemos creer que si se hubiesen dado esas instrucciones al jurado, éste habría declarado al acusado culpable de asesinato en segundo grado. De todos modos, estamos obligados a convenir con el apelante en que no puede decirse que la prueba en su totalidad sostenga tal veredicto. Podría justificar una fuerte sospecha de que Severiano Cruz actuó herido en sus sentimientos, debido al regaño echádole, o al consejo no solicitado dádole por su tío. No establece el elemento de malicia fuera de duda razonable y al acusado debió dársele el beneficio de esa duda.

*Debe revocarse la sentencia apelada y devolverse el caso para la celebración de un nuevo juicio.*